UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WILFRED LABOSSIERE,

*Plaintiff*,

v.

N. BAXTER,

*Defendant*.

No. 21-CV-10538 (KMK)

<u>ORDER & OPINION</u>

<u>Appearances</u>:

Wilfred Labossiere
Stormville, NY
*Pro Se Plaintiff*

Rosemary Bernadette Boller, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Wilfred Labossiere ("Plaintiff"), proceeding pro se, brings this Action against N. Baxter

("Defendant"), pursuant to 42 U.S.C. § 1983 alleging deliberate indifference in violation of the

Eighth Amendment, retaliation in violating of the First Amendment, and denial of his right to

due process in violation of the Fourteenth Amendment.  (*See generally* Compl. (Dkt. No. 2).)

Before the Court is Defendant's Rule 12(c) Motion for Judgment on the Pleadings (the

"Motion").  (*See* Not. of Mot. (Dkt. No. 50).)  For the reasons set forth below, the Motion is

granted.

## I.  Background

### A.  Materials Considered

"Courts may on a Rule 12(c) motion—just as on a Rule 12(b)(6) motion—consider extrinsic material that the complaint incorporates by reference, that is integral to the complaint, or of which courts can take judicial notice . . . ."  *Stetson Real Est. LLC v. Sentinel Ins. Co., Ltd.*, 609 F. Supp. 3d 291, 295 (S.D.N.Y. 2022) (quoting *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021)), *aff'd*, No. 22-1748, 2023 WL 6563870 (2d Cir. Oct. 10, 2023). "[T]he Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment."  *Watson v. New York*, No. 22-CV-9613, 2023 WL 6200979, at *1 (S.D.N.Y. Sept. 22, 2023); *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety . . ., documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (internal quotation marks and citation omitted)); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings[,] and matters of which judicial notice may be taken.'" (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993))).

Additionally, when reviewing a complaint submitted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks and citation omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-

4732, 2010 WL 5186839, at \*4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics and citation omitted),

statements by the plaintiff "submitted in response to [a defendant's] request for a pre-motion

conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at \*2

(E.D.N.Y. Sept. 19, 2013), "documents either in [the plaintiff's] possession or of which [the]

plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282

F.3d 147, 153 (2d Cir. 2002) (quotation marks and citation omitted), and "[plaintiff's] opposition

memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at \*1 n.2 (S.D.N.Y. Nov.

17, 1997) (citing *Gil v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987)).

Accordingly, the Court will consider documents attached to Plaintiff's Complaint.  (*See*

Compl. at 8–18.)  Defendant also attaches documents to his briefing, including materials related

to a grievance by Plaintiff dated July 19, 2019, (Decl. of Rosemary B. Boller ("Boller Decl."),

Ex A (Dkt. No. 51-1)), Plaintiff's Article 78 petition filed in New York Supreme Court Dutchess

County in July 2020, (*id.*, Ex. B (Dkt. No. 51-2)), administrative materials related to a December

2019 disciplinary hearing concerning marijuana that was discovered in Plaintiff's locker, (*id.*,

Ex. C (Dkt. No. 51-3) at 11–39)[1], and the New York Supreme Court's decision and order on

Plaintiff's Article 78 petition, (*id.*, Ex. D (Dkt. No. 51-4)).  The Court will consider Defendant's

documents because it may properly take judicial notice of "the records of state administrative

procedures," *Murphy v. Rodriguez*, No. 23-CV-6998, 2024 WL 4290723, at \*2 (S.D.N.Y. Sept.

25, 2024) (quoting *Moor v. Fischer*, No. 10-CV-4038, 2011 WL 2988527, at \*2, 4 (S.D.N.Y.

July 22, 2011)), and of "state court orders," *Kassenoff v. Kassenoff*, No. 22-CV-2162, 2023 WL

---

[1] Pages 1 to 10 of Exhibit C constitute Respondent Anthony Annucci's response to Plaintiff's Article 78 petition.  (*See* Boller Decl., Ex. C at 1–10.)  This portion of Exhibit C is not drafted by Plaintiff, attached to Plaintiff's briefing, or otherwise relied upon by Plaintiff in drafting his Complaint. Accordingly, the Court will not consider pages 1 to 10 of Exhibit C.

2648844, at *1 (S.D.N.Y. Mar. 27, 2023), without converting the motion into one for summary judgment.

The Court notes that it may consider these documents for the fact that they exist, but not for the truth of the matters asserted therein.  *See Ferranti v. Arshack, Hajek & Lehrman PLLC*, No. 20-CV-2476, 2021 WL 1143290, at *3 (S.D.N.Y. Mar. 24, 2021) ("The [c]ourt may take judicial notice of a document filed before another court and may consider such documents for the fact that they exist, but not for the truth of the matters asserted therein." (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)), *appeal withdrawn*, No. 21-1245, 2021 WL 3575023 (2d Cir. June 23, 2021); *Hutchins v. Solomon*, No. 16-CV-10029, 2018 WL 4757970, at *7 (S.D.N.Y. Sept. 29, 2018) (taking judicial notice of filings in a court case submitted by a party "only to establish the fact of such filings and what they contained, not for the truth of the matter asserted therein" (citation omitted)).

B.  Factual Background

The following facts are drawn from the Complaint and other materials the Court may properly consider.  The facts alleged are assumed true for the purpose of resolving the instant Motion.  *See Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023).

At the relevant time, Plaintiff was incarcerated in Block F of Downstate Correctional Facility ("Downstate"), located in Fishkill, New York.  (*See* Compl. 2.)  On June 29, 2019, Plaintiff underwent rectal surgery.  (*Id.* 3.)  Plaintiff was directed to shower after a bowel movement to keep the surgical area clean and prevent infection.  (*Id.* 10.)  On July 11, 2019, a Block Officer was given "[a]n extension of the original order . . . in the form of a shower pass."  (*Id.*)

On July 13, 2019, Defendant was working the 3 PM to 11 PM shift in Plaintiff's cell block. (*Id.*) Plaintiff made two requests during Defendant's shift to leave his cell, travel to the bathroom that was located next to his cell, and shower. (*Id.*) Defendant refused these requests but let other inmates in Block F "walk their training dogs . . . and check the laundry in the washing machine." (*Id.*)

On July 19, 2019, Plaintiff filed a grievance related to Defendant's refusal to permit Plaintiff to shower. (*See* Dkt. No. 51-1 at 4.) On August 21, 2019, the superintendent denied Plaintiff's grievance, noting that Plaintiff was not permitted to leave his cell on July 13, 2019, because the facility experienced "an electrical emergency," that other inmates with dogs received special clearance to go outside so that their dogs could relieve themselves, and that Defendant was unaware of Plaintiff's condition or medical needs and had believed that Plaintiff "would be able to accomplish his needs using the water in his cell." (*See* Dkt. No. 51-1 at 6; *see also id.* 11–12 (a memorandum dated August 29, 2019, by Defendant describing the facility emergency and his lack of knowledge as to Plaintiff's medical condition and any incident that occurred on February 10, 2017).) On August 26, 2019, Plaintiff indicated his intention to appeal the denial of his grievance. (*See id.* 6.)

Shortly after this incident, Plaintiff was transferred to Block A, Defendant's "main block," without explanation. (Compl. 3.) On December 11, 2019, a K-9 search conducted by an Office of Special Investigations investigator uncovered 0.6 grams of marijuana in Plaintiff's locker. (*Id.*) As a result, Defendant was keeplocked pending a disciplinary hearing, (Dkt. No. 51-3 at 24), which took place on December 19, 2019, (*see id.* 13, 32–35). At the hearing, Plaintiff pled guilty. (*Id.* 33.) The hearing disposition was 30 days confinement in keeplock, of which 20 days were suspended. (*Id.* 35.)

On January 9, 2020, Plaintiff appealed the disposition of the disciplinary hearing. (*See id.* 38.) On March 20, 2020, the New York State Department of Corrections and Community Supervision ("DOCCS") Deputy Commissioner affirmed the disposition. (*See id.* 37.) The disposition was reversed without explanation on November 16, 2020. (*See* Compl. 9.)

On June 29, 2020, Plaintiff filed an Article 78 petition challenging the disposition of the disciplinary hearing. (*See* Dkt. No. 51-2 at 1.) On December 28, 2020, the Dutchess County Supreme Court dismissed Plaintiff's petition. (*See generally* Dkt. No. 51-4.)

C.  Procedural Background

Plaintiff initiated this Action against Downstate, "John Doe (Officer) Block Officer of Block 3 to 11 Shift on July 13, 2019," and Defendant, on December 9, 2021. (*See generally* Compl.) On February 24, 2022, the Court dismissed Plaintiff's claims against Downstate as barred by the Eleventh Amendment. (Dkt. No. 11 at 2.) The Court also directed Plaintiff to file an amended complaint including specific allegations as to the John Doe Defendant. (*See id.* at 3.) On June 14, 2022, the Court again instructed Plaintiff to file an amended complaint containing specific allegations as to the John Doe Defendant or risk dismissal. (*See* Dkt. No. 16 at 2.) Plaintiff failed to do so. (*See generally* Dkt.) On August 12, 2022, the Court dismissed Plaintiff's claims against John Doe Defendant for failure to plead personal involvement. (*See* Dkt. No. 20 at 1–2.) The Court directed service on Defendant multiple times between February 2022 and October 2023. (*See* Dkt. Nos. 11, 17, 19, 29.) Defendant was finally served on December 28, 2023. (Dkt. No. 31.)

On May 6, 2024, in response to Defendant's pre-motion letter, the Court set a briefing schedule on the instant Motion, (*see* Dkt. No. 46), and stayed discovery pending the Motion's

resolution, (*see* Dkt. No. 47).  On June 3, 2024, Plaintiff filed a "stipulation concerning settlement agreement."  (Dkt. No. 49.)

On June 7, 2024, Defendant filed the instant Motion.  (*See* Not. of Mot.; Defendant's Mem. of Law in Supp. of Mot. ("Def. Mem.") (Dkt. No. 52).)  On July 11, 2024, Plaintiff requested a 60-day extension to respond to Defendant's Motion.  (*See* Dkt. No. 54.)  Defendant did not oppose the extension, (*see* Dkt. No. 55), and the Court granted the extension on July 15, 2024, (*see* Dkt. No. 56).  Plaintiff did not file an Opposition to Defendant's Motion.  (*See generally* Dkt.)  On September 25, 2024, Defendant requested that the Court deem his Motion to be fully submitted.  (*See* Dkt. No. 59 at 1.)

The docket indicates that Plaintiff was served Defendant's moving papers on June 7, 2024.  (*See* Dkt. No. 53.)  Plaintiff was thus on notice that a Motion for Judgment on the Pleadings was filed; indeed, he requested an extension to respond, further indicating that he was aware of his ability to respond.  Accordingly, the Court deems the Motion fully submitted and will decide it on the merits.  *See Mayo v. Reid*, No. 23-CV-9719, 2024 WL 5158212, at *2 (S.D.N.Y. Dec. 18, 2024) (deeming motion fully submitted after Plaintiff had received ample notice of its submission); *Peachey v. Zayaz*, No. 23-CV-06409, 2024 WL 4932527, at *1 n.2 (S.D.N.Y. Dec. 2, 2024) (same).

## II.  Discussion

### A.  Standard of Review

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim."  *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (quoting *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020)); *Hunte v. Rushmore Loan Mgmt. Servs., LLC*, No. 22-CV-2169, 2024

WL 1076683, at *2–3 (S.D.N.Y. Mar. 11, 2024) (same).  Accordingly, "[t]o survive a Rule 12(c) motion, [the plaintiff's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Lively*, 6 F.4th at 301 (second alteration in original) (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)).

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed.

R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss [or a motion for judgment on the pleadings], a judge must accept as true all of the factual allegations contained in the complaint," *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the court must "construe[] [the plaintiff's] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and citation omitted)).

B. Analysis

   1. Deliberate Indifference

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. That broad proscription extends to a prison official's "deliberate indifference to serious medical needs of prisoners." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Zeigler v. Annucci*, No. 23-CV-707, 2024 WL 4252682, at *6 (S.D.N.Y. Sept. 20, 2024) (same).

To successfully state a constitutional violation based on deliberate indifference, an inmate must plausibly allege (1) "that he suffered a sufficiently serious constitutional deprivation," and (2) that the defendants "acted with deliberate indifference." *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017); *Zeigler*, 2024 WL 4252682, at *6 (same). The first element is "objective" and requires that a plaintiff show that the "alleged deprivation of adequate medical care [is] sufficiently serious." *Spavone*, 719 F.3d at 138 (citation and quotation marks omitted). While "[t]here is no settled, precise metric" for "seriousness," *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003), a plaintiff must ultimately "show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health," *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted). "The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care. This means that the charged official must act or fail to act while *actually aware* of a substantial risk that serious inmate harm will result." *Barnes v. Uzu*, No. 20-CV-5885, 2022 WL 784036, at *11 (S.D.N.Y. Mar. 15, 2022) (alteration adopted) (emphasis in original) (quoting *Spavone*, 719 F.3d at 138). A defendant's awareness of the risk of serious harm can be established through "inference from circumstantial evidence," including "from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Gibson v. Mount Vernon Montefiore Hosp. Exec. Dir.*, No. 22-CV-4213, 2024 WL 1217528, at *11 (S.D.N.Y. Mar. 19, 2024) (same). However, "mere negligence" is insufficient to state a claim for deliberate indifference. *Walker*, 717 F.3d at 125 (citation and quotation marks omitted).

"Although deliberate indifference claims are most often asserted against medical personnel," *Bookman v. Lindstrand*, No. 15-CV-1542, 2018 WL 3121688, at *12 (N.D.N.Y. Feb. 14, 2018), *report and recommendation adopted*, 2018 WL 1470585 (N.D.N.Y. Mar. 26, 2018),

"non-medical personnel may [also] be found to have engaged in deliberate indifference," *Haynes v. City of New York*, No. 19-CV-1925, 2020 WL 4926178, at *14 n.28 (S.D.N.Y. Aug. 20, 2020) (citing *Roundtree v. City of New York*, No. 15-CV-8198, 2018 WL 1586473, at *6 (S.D.N.Y. Mar. 28, 2018)). That Plaintiff has accused Defendant, a non-medical DOCCS employee, of deliberate indifference does not, however, alter the relevant analysis, because "[t]he same standards apply to a claim of deliberate indifference to serious medical needs on the part of nonmedical prison personnel." *Dumel v. Westchester County*, No. 19-CV-2161, 2021 WL 738365, at *10 (S.D.N.Y. Feb. 25, 2021) (quoting *Feliciano*, 2017 WL 1189747, at *13); *see also Shepherd v. Fisher*, No. 08-CV-9297, 2017 WL 666213, at *11 (S.D.N.Y. Feb. 16, 2017) (observing that although certain defendants were "not medical personnel," an incarcerated plaintiff's deliberate-indifference claims against them were "nonetheless evaluated under the 'deliberate indifference' framework of the Eighth Amendment"). Courts in the Second Circuit have frequently observed that to establish a deliberate indifference claim against nonmedical personnel, "a plaintiff must prove that [the] nonmedical prison personnel intentionally delayed access to medical care when the inmate was in extreme pain and . . . made his medical problems known to the attendant prison personnel or that the inmate suffered a complete denial of medical treatment." *Haynes*, 2020 WL 4926178, at *14 n.28 (quotation marks and alteration omitted) (quoting *Roundtree*, 2018 WL 1586473, at *6); *Crandell v. Ross*, No. 19-CV-6552, 2020 WL 134576, at *4 (W.D.N.Y. Jan. 13, 2020) (reciting the same standard). "At a minimum, there must be at least some allegations of a conscious or callous indifference to a prisoner's rights." *Hodge v. Coughlin*, No. 92-CV-622, 1994 WL 519902, at *11 (S.D.N.Y. Sept. 22, 1994) (citation omitted).

"When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious, to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (emphases omitted) (citation and quotation marks omitted); *see also James v. Brown*, No. 14-CV-1767, 2016 WL 3945688, at *4 (S.D.N.Y. July 19, 2016) (noting that where an inmate alleges "an unreasonable delay or interruption in treatment, the seriousness inquiry focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone" (alteration and citation omitted)).  "[A] short interruption of care, even if the underlying medical condition is serious, does not constitute a serious medical need where the 'alleged lapses in treatment are minor.'" *Ferguson v. Cai*, No. 11-CV-6181, 2012 WL 2865474, at *4 (S.D.N.Y. July 12, 2012) (quoting *Smith*, 316 F.3d at 186).  "Where temporary delays or interruptions in the provision of medical treatment have been found to satisfy the objective seriousness requirement in this Circuit, they have involved either a needlessly prolonged period of delay, or a delay which caused extreme pain or exacerbated a serious illness." *Id.* (collecting cases).  Where a plaintiff cannot show actual injury, he may nonetheless satisfy the objective prong by demonstrating that the delay of medical treatment exposed him to "an unreasonable risk of future harm." *Smith*, 316 F.3d at 188.  However, "the inmate must show that the risk of future harm is 'so grave that it violates contemporary standards of decency.'" *Braxton v. Nichols*, No. 08-CV-8568, 2010 WL 1010001, at *3 (S.D.N.Y. Mar. 18, 2010) (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)); *see also Bonie v. Annucci*, No. 20-CV-640, 2023 WL 2711349, at *14 (S.D.N.Y. Mar. 30, 2023) (same).

Defendant argues that Plaintiff has failed to meet the objective and subjective prongs of his deliberate indifference claim. (*See* Def. Mem. 9–12.) The Court agrees.

Plaintiff alleges that his request for a shower was twice denied by Defendant, and that these requests constituted requests for medical treatment. (*See* Compl. 3, 10.) Thus, his claim against Defendant reads as a delay in treatment for an unspecified period of time. However, Plaintiff has not plausibly alleged that his inability to shower during Defendant's shift on July 13, 2019, exposed him to an unreasonable risk of harm, caused extreme pain, or exacerbated a serious illness. In fact, Plaintiff does not allege, even obliquely, that the denial of his shower requests impacted his health, the cleanliness of his surgical area, or his recovery from the surgery. (*See generally* Compl.) In other words, Plaintiff has failed to demonstrate that he was in sufficiently serious need of a shower or that this was "an objectively serious medical need." *Henry v. Doe*, No. 19-CV-10153, 2020 WL 209091, at *6 (S.D.N.Y. Jan. 10, 2020); *see also Fraser v. Hallmark*, No. 24-CV-63, 2024 WL 1374719, at *4 (D. Conn. Apr. 1, 2024) (dismissing a deliberate indifference claim where plaintiff "allege[d] no facts suggesting that the delay in obtaining treatment exacerbated his injuries").

Even if Plaintiff satisfied the objective prong, he has not shown that Defendant failed to act while actually aware of a substantial risk that serious harm would result to Plaintiff. Simply put, Plaintiff does not allege that Defendant was aware of Plaintiff's condition; rather, at most, an unnamed "Block Officer" was notified two days prior to the incident that Plaintiff should shower after a bowel movement. (Compl. 10.) This does not suffice to demonstrate awareness on the part of Defendant or suggest that Defendant was deliberately indifferent. *See Barnes*, 2022 WL 784036, at *12–13 (noting that plaintiff had not sufficiently pled that defendant was aware of Plaintiff's medical condition when the complaint alleged only that Plaintiff "complained to

unnamed personnel," not defendant). Nor has Plaintiff alleged that the denials constituted a "delay of treatment . . . as a form of punishment, ignored a life-threatening and fast-degenerating condition for several days, or delayed major surgery." *Figueroa v. Sierra*, No. 23-CV-1625, 2024 WL 308515, at *2 (D. Conn. Jan. 26, 2024). Accordingly, Plaintiff has not sufficiently alleged the subjective prong of this claim. *See Damon v. New York*, No. 23-CV-74, 2023 WL 11965130, at *13 (N.D.N.Y. Mar. 28, 2023) (finding that plaintiff had failed to satisfy the subjective prong where he "ha[d] not alleged any facts to indicate that the nurse, doctor, or guards acted intentionally or with reckless disregard for plaintiff's health"), *report and recommendation adopted*, 2023 WL 11965128 (N.D.N.Y. Apr. 24, 2023); *Stewart v. City of New York*, No. 15-CV-4335, 2018 WL 1633819, at *8–9 (S.D.N.Y. Mar. 31, 2018) (dismissing deliberate indifference claim where there were no allegations that the defendant "acted intentionally to delay the provision of medical treatment in a way that subjected [the plaintiff] to an excessive risk of harm").

Because "not every lapse in prison medical care will rise to the level of a constitutional violation," *Smith v. Centurion of Vermont, LLC*, No. 20-CV-6, 2023 WL 2446298, at *3 (D. Vt. Mar. 10, 2023) (alteration adopted) (citation omitted), and because Plaintiff has failed to plausibly allege deliberate indifference on the part of Defendant, this claim must be dismissed.

2. Retaliation

"Prisoners have a constitutional right to petition the government, and it is a violation of [Section] 1983 for prison officials to retaliate against prisoners for the exercise of that right." *Bonie*, 2023 WL 2711349, at *12 (quoting *Perkins v. Perez*, No. 17-CV-1341, 2019 WL 1244495, at *13 (S.D.N.Y. Mar. 18, 2019)). "A plaintiff asserting a First Amendment retaliation claim must establish that: (1) his speech or conduct was protected by the First Amendment;

14

(2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Galgano v. County of Putnam*, No. 16-CV-3572, 2024 WL 1623401, at *104 (S.D.N.Y. Apr. 15, 2024) (internal quotation marks omitted) (quoting *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015)); *accord Barkai v. Mendez*, No. 21-CV-4050, 2024 WL 811561, at *23 (S.D.N.Y. Feb. 21, 2024); *Terry v. Hulse*, No. 16-CV-252, 2018 WL 4682784, at *10 (S.D.N.Y. Sept. 28, 2018).  "An inmate bears the burden of showing that 'the protected conduct was a substantial or motivating factor' in the prison officials' disciplinary decision." *Holland v. Goord*, 758 F.3d 215, 225–26 (2d Cir. 2014) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).  Additionally, "[t]he Second Circuit has made clear that courts are to 'approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Terry*, 2018 WL 4682784, at *10 (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)); *see also Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (same); *Gunn v. Milani*, No. 20-CV-2681, 2024 WL 4124319, at *7 (S.D.N.Y. Sept. 9, 2024) (same).  Retaliation claims must be "supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan*, 794 F.3d at 295 (quotation marks and citation omitted).

Defendant does not dispute the first element.  (*See* Def. Mem. 12.)  "[T]he filing of prison grievances is constitutionally protected." *Gunn v. Malani*, No. 20-CV-2681, 2023 WL 2664805, at *6 (S.D.N.Y. Mar. 28, 2023) (alterations adopted) (collecting cases).  As to the second element—whether Defendant took an adverse action against Plaintiff—the focus of the inquiry is whether the "retaliatory conduct[] would deter a similarly situated individual of ordinary

firmness from exercising his or her constitutional rights." *Davis*, 320 F.3d at 353.  It is true that

"confining a prisoner to keeplock is sufficient to establish an adverse action." *Gunn*, 2024 WL

4124319, at *8 (alteration adopted) (quotation marks and citation omitted).  However, "[t]he

mere filing of a misbehavior report alone, without evidence of other repercussions, does not

constitute an adverse action." *Grace v. Alvarado*, No. 21-CV-3578, 2024 WL 1859851, at *7

(S.D.N.Y. Apr. 29, 2024).  "Typically, courts require a showing of additional punishment above

the filing of a misbehavior report to find an adverse action." *Vidal v. Valentin*, No. 16-CV-5745,

2019 WL 3219442, at *8 (S.D.N.Y. July 17, 2019).  Plaintiff has not alleged any further other

repercussions or additional punishment in relation to the filing of a misbehavior report related to

the K-9 search.  (*See generally* Compl.)  Therefore, only Plaintiff's 10-day term in keeplock

constitutes an adverse action.

  As for causal connection, Plaintiff filed a grievance related to the shower requests on July

19, 2019, (*see* Dkt. No. 51-1 at 8), and was keeplocked five months later in December 2019 in

relation to the discovery of marijuana in his locker, (*see* Dkt. No. 51-3 at 24).  When assessing

whether

> there was a causal connection between protected conduct and alleged adverse
> action, a court may consider:  (1) the temporal proximity of the filing to the
> grievance and the disciplinary action; (2) the inmate's prior good disciplinary
> record; (3) vindication at a hearing on the matter; and (4) statements by the
> defendant regarding his motive for disciplining the plaintiff.

*Gunn*, 2024 WL 4124319, at *8 (alterations adopted) (quotation marks and citation omitted);

*accord Thomas v. DeCastro*, No. 14-CV-6409, 2021 WL 5746207, at *7 (S.D.N.Y. Dec. 1,

2021); *see also Vogelfang v. Capra*, 889 F. Supp. 2d 489, 517 (S.D.N.Y. 2012) (explaining that

"[t]he customary indicators which could give rise to an inference of retaliation" include

"temporal proximity between [the plaintiff's protected activity] and the allegedly-retaliatory

actions" and "telling comments by the defendant[]").  However, "[t]emporal proximity alone . . .

is insufficient to state a plausible retaliation claim." *Jumpp v. Terranova*, No. 16-CV-683, 2016 WL 2858775, at *2 (D. Conn. May 16, 2016) (citing *Faulk v. Fisher*, 545 F. App'x 56, 58–59 (2d Cir. 2013) ("[W]e have consistently required some . . . evidence of retaliatory animus [greater than temporal proximity alone] before permitting a prisoner to proceed to trial on a retaliation claim")); *see also Javier v. Russo*, No. 21-CV-7097, 2023 WL 5532468, at *6 (S.D.N.Y. Aug. 28, 2023) (dismissing a First Amendment retaliation claim where plaintiff alleged only temporal proximity and "no other facts to support the inference that any conduct be defendants was motivated by plaintiff's grievance" (internal quotation marks omitted) (citing *Salahuddin v. Mead*, No. 95-CV-8581, 2002 WL 1968329, at *6 (S.D.N.Y. Aug. 26, 2002))); *Spies v. Kelleher*, No. 01-CV-499, 2005 WL 453127, at *4 (W.D.N.Y. Feb. 25, 2005) (dismissing First Amendment retaliation claim where plaintiff "c[a]me forward with no evidence, other than temporal proximity, to establish a causal connection between this filing of the grievance and [the adverse action]"). Further, a plaintiff must show that the "retaliatory motive" is a "but-for" cause. *Barkai*, 2024 WL 710315, at *13 (quoting *Hartman v. Moore*, 547 U.S. 250, 260). "In other words, 'it is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury.'" *Id.* (alteration adopted) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019)).

A window of eight months can support an inference of causal connection, *see Ortiz v. Orange County, New York*, No. 23-CV-2802, 2024 WL 113705, at *9 (S.D.N.Y. Jan. 10, 2024), but only if the plaintiff provides some additional explanation as to the gap in time between protected activity and adverse action, *see Thurmond v. Thomas-Walsh*, No. 18-CV-409, 2022 WL 18027617, at *6 (S.D.N.Y. Dec. 30, 2022). While it is true that Defendant completed the misbehavior report that resulted in Plaintiff's 10-day keeplock, (*see* Dkt No. 51-3 at 22), Plaintiff

has not alleged, let alone plausibly, that there is any connection between the July 2019 grievance and the circumstances resulting in the misbehavior report, (*see generally* Compl.), or that Defendant "had any motive at all beyond Plaintiff's violation of DOCCS regulations," *Thomas v. DeCastro*, No. 14-CV-6409, 2018 WL 1322207, at *10 (S.D.N.Y. Mar. 13, 2018).[2]  Plaintiff has not alleged that Defendant acted with a retaliatory motive in filing the December 2019 misbehavior report.  (*See generally* Compl.)  In the absence of any additional allegations of a causal connection, Plaintiff has not plausibly alleged causation.  *See Freckleton v. Mercy Coll. NY*, No. 22-CV-1985, 2023 WL 2648827, at *7 (S.D.N.Y. Mar. 27, 2023) (finding no causation where there was a six month gap and plaintiff did "not allege[] any direct retaliatory animus against her by [d]efendants or causation through temporal proximity"); *Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 289 (S.D.N.Y. 2020) (dismissing a retaliation claim where "the alleged retaliatory conduct took place more than five months after engaging in protected activity" and the plaintiff failed to "allege any other evidence of a causal connection").  Accordingly, this claim must be dismissed.

### 3.  Due Process

Defendant suggests that the Complaint "can be construed as asserting a procedural due process claim based upon the [m]isbehavior [r]eport and/or the subsequent hearing."  (Def. Mem. 14.)  The Court is not sure that such a claim can be drawn from the Complaint, but in any case, the claim fails because Plaintiff was not deprived of a liberty interest.

---

[2] The Court notes that the disposition of the December 2019 disciplinary hearing was reversed on November 16, 2020.  (*See* Compl. 9.)  No further details are provided as to why the disposition was reversed and Plaintiff does not plausibly allege that the misbehavior report that formed the basis of the hearing was false.  (*See generally id.*)

"To make out a due process claim related to his keeplock . . ., Plaintiff must plausibly allege:  (1) that there was a deprivation of a protected liberty interest; and (2) that such deprivation was the result of the procedural defects."  *Thomas*, 2018 WL 1322207, at *6 (citing *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004)).  "It is well settled that 10 days, absent allegations of any 'atypical and severe hardship,' is an insufficiently short period of time to establish a violation of a liberty interest."  *Id.* (citing *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004)); *see also Brown v. Markham*, No. 16-CV-710, 2018 WL 1918625, at *4 (S.D.N.Y. Apr. 20, 2018) (holding that a 30-day keeplock did not implicate a deprivation of liberty).  Because Plaintiff has failed to establish a liberty interest as related to the imposition of the 10-day keeplock, this claim must be dismissed.  *See Bell v. Saunders*, No. 20-CV-256, 2022 WL 2064872, at *6–7 (N.D.N.Y. June 8, 2022) (dismissing due process claim where plaintiff failed to establish that confinement implicated a liberty interest protected by the Due Process Clause); *Thomas*, 2018 WL 1322207, at *7 (same).[3]

### III.  Conclusion

For the reasons set forth above, Defendant's Motion is granted and Plaintiff's Complaint is dismissed.  If Plaintiff wishes to file an amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion & Order.  Plaintiff is advised that the amended complaint will completely replace, not supplement, the Complaint.  The amended complaint must therefore contain all of the claims, defendants, and factual allegations that Plaintiff wishes the Court to consider.  If

---

[3] Because Plaintiff has failed to plausibly allege any such claim, the Court does not reach Defendant's arguments as to his qualified immunity.

Plaintiff fails to timely file an amended complaint, Plaintiff's claims may be dismissed with prejudice.

The Clerk of the Court is respectfully directed to mail this Opinion and Order to Plaintiff, and to terminate the pending Motion.  (Dkt. Nos. 50, 51.)

SO ORDERED.

Dated:    March 21, 2025
           White Plains, New York

                                                  _____
                                                  KENNETH M. KARAS
                                                  United States District Judge